Good morning, everyone. Right before I call the calendar, Judge Miller and I would like to extend a very warm welcome to Judge Montalvo from the Western District of Texas. He's lending us his talents for a few days this week, so thank you, Judge, for coming and sitting with us. The cases will be called in the order that they're listed on the calendar. If you wish to reserve time for rebuttal, please let me know. I'll try to help you out, but keep your eye on the clock yourself as well. The first case up for argument is Rubin v. State of Oregon. Good morning. May it please the Court. Zach Duffley for Plaintiff Appellant Tamara Rubin. May I please reserve three minutes for rebuttal? All right. Your Honors, this is a case about a state investigator who, for months, knowingly withheld exculpatory evidence from the district attorney, resulting in the ongoing criminal prosecution of plaintiff in violation of the 14th Amendment prohibition on the direct fabrication of evidence. Counsel, let me ask you, it's not entirely clear to me that you are still proceeding with the district courts or appealing the district court's ruling as declaina. Is that part of this appeal? No, Your Honor, we have The district court granted summary judgment for all of plaintiff's claims. As just mentioned, our appeal is limited to the claim for 14th Amendment deliberate fabrication of evidence with regard to Mr. Kalonji's, and we ask the court to reverse the district court with respect to that order and remand for further proceedings. Despite the evidence cited before the court at and other events of the record, the district court agreed with the defendants that plaintiff's claim was unsupported by evidence in the record. To do this, the district court adopted the defendant's characterization of the IRS investigation as irrelevant, as well as defendant's assertion that Kalonji's believed that the IRS investigation was irrelevant. Only based on those conclusions could the court then conclude that there was no evidence to support the legal claim and therefore that there was also qualified immunity on the basis that there was no clearly established right at issue. We believe that the court in so doing overlooked and ignored admissible evidence that supported the plaintiff's argument. What's that evidence? The evidence is the testimony from defendant Kalonji's, as well as primarily the record of memorandum and formal writings to the district attorney from Ms. Rubin's criminal defense attorney following her indictment by the county. The evidence is focused at two points in time, and the difference in those points in time is significant. I think it is important to note that the defense and the district court focused on the earlier phase of the timeline, namely October and November. While those are relevant, we believe that the focus should be later in the following year, in the spring, February and March. Yes, Your Honor. What facts were present that establishes Kalonji's should have known appellant was innocent at the time of creating the spreadsheet? Because that's the beginning of the process. Kalonji's creates the spreadsheet. Yes. At that point in time, point to me any facts that say Kalonji's should have known then or later on before he testified in front of the grand jury that your client was innocent. Your Honor, I cannot do that, and that is why we believe that the focus on that time is misguided. There is no evidence in the record, and we don't at that point in time in October before the grand jury. The earliest point in time that the record supports a reasonable juror's ability to conclude that Mr. Kalonji's knew of the claims that they were the materials were exculpatory is November 10th or November 13th, which as the court and the defendants point out, is overlapping in time with the grand jury such that we can't conclude for the purposes of this appeal that Mr. Kalonji's had that awareness at that point in time, but we don't think that... Sorry, go ahead. So it's your argument that he had a duty when he learned this information after his grand jury testimony to go back and update his testimony or tell somebody, you know, the testimony I gave, which I thought was correct when I gave it, I've now learned is not correct? Not a free-floating duty in the abstract or independent of the very specific and detailed sort of facts here. Only because of the facts here do we argue that essentially the failure to then relay the materials that were withheld is what is actionable here. I think there is some kind of conceptual difference between framing it as a duty similar to a Brady duty versus a function of the facts here showing that the evidence was withheld, that withholding was ongoing past a point where... Which evidence was withheld? The materials from the IRS that were provided by the plaintiff to the state in October and November, but that the state did not provide to the county. And it was the state's failure to provide those records to the county that we believe is violating the law. It was the file that Kalonji's and Klainer received that they couldn't open. It was a PDF document that was password protected that they were not able to open until, what, 10, 12 days after Kalonji's testified before the grand jury that we're in the possession of Ms. Rubin's attorney. Yes, Your Honor. So how does that create a duty of Mr. Kalonji's? We don't argue that the duty was created at that point in time, but that following that point in time, you have further exchanges with Mr. Bezanson and Mr. Kalonji's and Klainer in December where they request a password for the materials. Defenses themselves argue that it's not until that point in time that they can be said to have awareness. So they concede that at that point in time they could have had awareness. There are then ongoing discussions between plaintiff's defendant attorney and the DA that involve both Mr. Kalonji's and the DHS agent through February, March, April, and into May. It is at that point in time that Mr. Kalonji's has the record that he has said he needs to make sense of the offenses alleged. And the plaintiff, through her defense attorney, has realized they have not shared that with the charging attorney, and the charging attorney still doesn't have that. So at that point in time is exposed the withholding and the ongoing withholding. So you're suggesting here that there's some clearly established law that after Kalonji's testified before the grand jury, he had to continue investigating when his testimony was that after he testified before the grand jury, he contacted the DA just simply to find out, you know, let me know when this case is going to trial so I'll be ready. So what show me clearly established federal law that says that once a law enforcement agent testifies before a grand jury, he or she has an ongoing duty to supplement that testimony. I cannot do that, Your Honor, and that is not what we argue. What we argue is that, one, and I should clarify, have I gone into my rebuttal time? You have, but go ahead and answer the question. Okay. Let's see, Mr. Kalonji's, I'm sorry, can you repeat the question, Your Honor? Sure. Clearly established federal law. We believe that the Devereux case addresses that, and that, again, as a matter of framing, the clearly established right isn't for Mr. Kalonji's to update his investigation. Rather, it is to be free from the direct fabrication of evidence, and that the evidence here to the district court was sufficient under the jury instruction to show that deliberate fabrication. Thank you. Thank you. I'll give you a little time back. No worries. May it please the court and counsel, John Zunkel, de Corsi, on behalf of the state. Kalonji's is entitled to qualified immunity on plaintiff's claim because he did not violate a clearly established right. Indeed, this court's case law undercuts plaintiff's claims. I'd like to begin where my friend on the other side left off, which is that from the time that the grand jury returned its indictment until the time the district attorney dismissed the case, plaintiff contends that Kalonji's had some sort of obligation. I'm not entirely clear what that obligation is. It's not a duty, but it's something to go back and to update his testimony based off of facts that Kalonji's received from plaintiff. There's no clearly established right that when a criminal defendant gives documents to a state actor, that that state actor then has to act on behalf of the criminal defendant, otherwise they fabricate evidence. And plaintiff argues that Devereaux is the case that clearly establishes that. Nothing in Devereaux deals with the issue of a state actor receiving possibly test evidence that undercuts maybe some of the testimony. I guess I want to be really clear about what Kalonji's said. He never said that he reached any sort of conclusion. All of his, even in his deposition. Right. And counsel's conceded that. He's not indicating that the creation of the chart was in any way a fabrication of evidence. It was subsequent to that when the communications began and information was then sent over to the investigators. His theories on withholding of that information from the people who would be in charge of making the prosecution decision. So what does the record show about Kalonji's involvement post his grand jury testimony? At ER 139, he says that in his deposition that he was not involved with the county investigation, that they were separate investigations. And I think as Judge Montalvo pointed out, that the entirety of his communication with the district attorney's office was, let me know when the next steps are. So he was not involved in any sense with the investigation and they are separate legal entities. You know, the state of Oregon DOJ is separate from the county district attorney in such that they aren't necessarily the same. And I guess my point about Kalonji's testimony was that his testimony did not ever address that he was inculpating plaintiff. His testimony was simply that there was $450,000 of transactions going between the two entities. And I guess I just come back to that there's no clearly established right and White v. Pauley tells us that when there's a unique set of facts and circumstances that counsels against the denial of qualified immunity, and which I think this case shows, right, we don't have any sort of indication from any court that a plaintiff has a right to have a state actor update their testimony. And if such an obligation existed we don't know what the bounds of that rule would be. Does that extend for 20 years after a criminal trial when the criminal defendant gives them information and such a rule even if this court would consider it would be unworkable. And I'm happy to answer any other questions that the court may have. You would agree with me though that this court erred in ruling that there was no clearly established law regarding deliberate fabrication of evidence. Because this court held that there was no clearly established law about that. You would agree with me that that was not a correct ruling? I mean, I think we have to be careful about how we define what is clearly established. The Supreme Court in White v. Pauley says that it's not some high level of generality. I mean, I think it's clearly established that a state actor cannot withhold evidence. But I don't think it's clearly established that when a criminal defendant has evidence that they believe is exculpatory and then gives it to a state actor that that state actor then is somehow... That's a different... I mean, you're conflating two issues here. One is the pseudo-Grady, let's say, issue here. But then there's also the Devereaux and Spencer cases in the Ninth Circuit that specifically say, you know, reckless disregard, so to speak, intentional indifference about the truthfulness of what you're putting in a report is clearly established law. You know, an investigator shouldn't do that. So here there's a suggestion that Mr. Kalandis, when he prepared the spreadsheet, there were some, you know, mistakes that there's a vague reference made to those mistakes, but I scrounged the record looking for those mistakes and I couldn't find them. So it's just a bold allegation. So that said, you would agree with me that Devereaux and Spencer say that it's a duty of care on the part of the investigator in terms of the entries he made on record. I agree with that to a point, but I think, you know, as Kostanich, this Court, says that the test from Devereaux is stringent and that mere carelessness isn't enough to rise to the level of fabrication of evidence. And so I think, you know, at the most what we have is some sort of carelessness, but I don't even think we have that. I mean, I don't think we have any evidence in the record other than the attorney's representation, plaintiff's attorney's representations in the criminal case that the facts mean something. We don't have any sort of expert testimony showing that there was any sort of error. All we have is a spreadsheet showing $450,000 going to, from the nonprofit. Yeah, and I guess I should add that I don't think, I don't hear plaintiff challenging the district court's ruling that the spreadsheet itself, the district court ruled that that was outside of the statute of limitations. So any sort of error in the spreadsheet itself is outside the statute of limitations. You anticipated my next question. When did the statute of limitations begin to run? I believe the district court said that it began to run when plaintiff had awareness of Kalanji's report. I don't, I apologize, I don't have the exact date in my head, but... So that creates a situation where if the statute of limitations started running then, plaintiff would have been required to file a lawsuit, perhaps even when the criminal case was pending, which is, quite frankly, an absurdity, isn't it? I agree that that would be... You know, Supreme Court law is clear. You know, wrongful prosecution, statute of limitation begins after you get exonerated from the charges, right? Well, I guess there's two different issues. The first is the grand jury testimony, but then there's also Kalanji's independent DOJ investigation about whether plaintiff and the non-profit engaged in their fiduciary duties to maintain... And I don't disagree that there's, you know, that you have to wait until the end of the criminal prosecution, but that's not an argument that plaintiff advances now. No, I get that. I do understand that, but it seems to me that it's something that we cannot gloss over. And we just can't simply ignore that a valid basis is that it was out of the statute of limitations timetable. I mean, I've not heard plaintiff advance any argument about that. I feel like plaintiff's argument is cabined to the time period, and I believe that's what plaintiff's counsel said at the podium, was cabined from the time of the grand jury, or maybe it's from the time that middle of December, when Kalanji's received the QuickBooks file and was able to open it with a proper password, from that time period until the time period that the charge is. And so I don't... And none of those arguments deal with the underlying analysis themselves. Thank you. If the court has no further questions, we ask that you affirm. Thank you. Thank you. Let's put two minutes on the clock, Ms. Dodds. Thank you, Your Honor. I think there's a couple of important fact points to make clear. One is that the claim that Mr. Kalanji wasn't involved with the DOJ investigation is a subjective claim by the defendants, and plaintiff has presented evidence that would permit a reasonable jury to conclude otherwise. As to the facts, there is something outside the record that is relevant, if Your Honor would permit me to add that fact at this moment for purposes of argument. Okay. So we're on appeal. We're limited to the actual record that was before the district court. I believe... What evidence can you point to that Kalanji's continued to be involved with the prosecution? Besides the evidence already cited in the record, including the narrative accounts of ongoing meetings with criminal defense attorney, the other state agent, and the DA with Mr. Kalanji's, where Mr. Kalanji's research and withholding of materials was the key focus of the conversation, we also have the fact that the DOJ investigation itself was ongoing. It's not as if, as with the DHS investigation, which was handed off to the county. The DOJ investigation resulted in the DHS referral, which prompted the county, but the DOJ investigation itself was ongoing, and I certainly think that implicates what Mr. Kalanji's responsibilities were at the time that he's now negotiating, or I should say, discussing with the DA. The other evidence is to his awareness of the import of the IRS materials includes things that are in the record, but not yet cited here in the record for the summary judgment court, namely that Mr. Kalanji's previous career was at the IRS doing this kind of work, so that we know he understood the import of the IRS records, and I think a reasonable trier of fact could conclude that he always knew the import of his analyses and what he was doing. Thank you very much. We ask the court to reverse and remand. All right. Thank you to both sides for your argument today. The matter is submitted.
judges: NGUYEN, MILLER, Montalvo